DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Troy LaVann Anderson ("Anderson"), appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On November 5, 2007, Frank Rocco, the owner of Rocky's Skating Center, was working on paperwork after the skating rink had closed. He received a call from a woman claiming to have left her keys inside the skating center. Rocco told her to come to the skating center and he would allow her to look for the missing keys. Rocco received a second call from the woman, who informed him that she was outside the skating center. Rocco let the woman in to the rink. As Rocco began to look for the keys, a man wearing gloves and a Halloween mask approached him from behind. The masked man was carrying a gun, demanded money and threatened to kill Rocco. Rocco gave the man a bag of coins and his wallet. Rocco observed *Page 2 
another man enter the skating center. After the robbery, the masked man left the skating center with the other man and the woman in a light colored vehicle.
 {¶ 3} As a result of the incident, Anderson was indicted for one count of aggravated robbery, in violation of R.C. 2911.01, a specification to the aggravated robbery count for use of a firearm, in violation of R.C. 2941.145, and one count of having weapons while under disability, in violation of R.C. 2923.13(A)(2). Anderson pled not guilty to these charges and, on May 28, 2008, the case proceeded to a jury trial. On May 30, 2008, the jury found Anderson guilty of the charges in the indictment. On June 2, 2008, the trial court sentenced Anderson to ten years of incarceration on the aggravated robbery charge, three years on the gun specification charge, and three years on the having weapons while under disability charge. The trial court ordered the sentences to run consecutively for a total of 16 years of incarceration. Anderson has timely appealed his conviction and sentencing, raising three assignments of error for our review.
 II. ASSIGNMENT OF ERROR I "THE EVIDENCE IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF AGGRAVATED ROBBERY AND/OR A SPECIFICATION TO THAT CHARGE INVOLVING A FIREARM AND AS A RESULT [] ANDERSON'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSITUTION AND FIFTH AMENEDMENT OF THE UNITED STATES CONSITUTION WERE VIOLATED."
 {¶ 4} In his first assignment of error, Anderson contends that the State failed to present sufficient evidence to support his conviction of aggravated robbery and the gun specification on this charge. We do not agree.
 {¶ 5} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production, while a manifest weight *Page 3 
challenge requires the court to examine whether the prosecution has met its burden of persuasion. State v. Thompkins (1997), 78 Ohio St.3d 380,390 (Cook, J., concurring). To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 6} Anderson contends that his convictions for aggravated robbery as well as the gun specification were not based on sufficient evidence. Pursuant to R.C. 2911.01(A)(1), "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall *** [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"
 {¶ 7} Specifically, Anderson contends that the State failed to verify that he had or used a firearm and that there was no physical evidence presented supporting the assertion that a firearm was used or that he was the person who used it. Finally, Anderson contends that because no weapon was ever recovered, the State failed to show that the gun was operable. Accordingly, it appears that Anderson contends that the State failed to present sufficient evidence that he possessed a firearm. We do not agree with this assertion.
 {¶ 8} The Ohio Supreme Court has stated that while the State must prove beyond a reasonable doubt that the firearm was operable, "such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the *Page 4 
instrument and the circumstances surrounding the crime." State v.Murphy (1990), 49 Ohio St.3d 206, syllabus, citing State v. Gaines
(1989), 46 Ohio St.3d 65). In the instant case, "[d]espite the [S]tate's failure to produce a gun at trial, there was substantial, uncontradicted evidence in the record indicating that appellant displayed and brandished a gun during the commission of a theft offense." State v.Nelson, 12th Dist. No. CA2006-04-030, 2007-Ohio-2294, at ¶ 18.
 {¶ 9} The State presented the testimony of the victim, Frank Rocco. Rocco testified that a female called him looking for lost keys. After he let her in the skating rink, a man wearing a Halloween mask came behind him with a gun. According to Rocco, his assailant stated, "`Give me your money, mother F, or I'm going to blow your head off or shoot you now.'" Rocco then described the gun. Rocco testified that his assailant said, "`Go in your office, mother F, and open your safe or I'm going to shoot you.'" Rocco explained that the assailant had the gun to his head. Rocco stated that he feared for his life and as a result, opened the safe and gave the contents to his assailant.
 {¶ 10} Rocco further testified that a few days after the incident, he called the detective on the case to tell him that he thought Anderson was his assailant. He explained that his assailant was muscular and knew his way around the skating rink. He further stated that Anderson had stopped by the skating rink a few weeks prior to the incident to "chit chat" which was unusual.
 {¶ 11} The State presented the testimony of Antoinette Grant, Anderson's co-defendant, who called Rocco to gain admittance to the skating rink. Grant testified that Anderson was her mother's friend. She testified that prior to November 5, she had a lot of contact with Anderson and that Anderson wanted her to help him rob the skating rink. Grant stated that she agreed to help him. Grant testified that on November 5, 2007, she called Rocco, who let her into the skating rink. Grant, in turn, let in Anderson, who was wearing a Halloween mask. *Page 5 
 {¶ 12} We conclude that there was sufficient evidence from which the jury could infer that Anderson possessed a deadly weapon based on his words and conduct. State v. Knight, 2d Dist. No. 2003 CA 14,2004-Ohio-1941, at ¶ 18.
 "In State v. Haskins, Erie App. No. E-01-016, 2003-Ohio-70, the court of appeals upheld the conviction for the aggravated robbery of a gas station, even though no gun had been displayed or found. The court reasoned: "In this case, the attendant in the gas station robbery testified that appellant threatened `Are you going to give me the money or do I have to pull this pistol out of my pocket?' The attendant responded immediately by putting up her hands, fearing that appellant did, in fact, have a gun. Although no weapon was actually seen or found, credible evidence was presented from which the jury could have found beyond a reasonable doubt that appellant did, in fact, have a deadly weapon on or about his person or under his control. Therefore, sufficient evidence was presented going to all the elements of the crime and the conviction was not against the manifest weight of the evidence.' Id., ¶ 42; see [State v. Green (1996), 117 Ohio App.3d 644] (state presented sufficient evidence of a deadly weapon when he made several threats to "blow the heads off" the victims, used his hand in a manner consistent with having a concealed gun, and the victims surrendered money based on their suspicions that he was armed and could carry out his threat)." Id.
 {¶ 13} Viewing this evidence in the light most favorable to the State, we find that a rational trier of fact could have found that the State proved beyond a reasonable doubt that Anderson possessed and brandished a gun during a theft offense. We specifically note the threats Anderson made to Rocco referencing the gun and Rocco's testimony that in fear for his life, he turned over his wallet and the money in the safe. Accordingly, Anderson's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE VERDICTS IN THIS CASE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AS A RESULT [] ANDERSON'S RIGHTS AS PROTECTED BY ARTICLE 1, SECTION 16 OF THE OHIO CONSITUTION AND FIFTH AMENDMENT OF THE UNITED STATES CONSITUTION WERE VIOLATED."
 {¶ 14} In his second assignment of error, Anderson contends that the verdicts in this case were against the manifest weight of the evidence. We do not agree. *Page 6 
 {¶ 15} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring).
 {¶ 16} A determination of whether a conviction is against the manifest weight of the evidence does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654,2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 17} In this assignment of error, Anderson contends that there were contradictions in the testimonial evidence of the witnesses and that his convictions of aggravated robbery, along with the gun specification, and having weapons under disability were against the manifest weight of the evidence. However, Anderson does not specifically point to any contradictions in the testimony, and our review of the evidence does not reveal any such contradictions. See App. R. 16(A)(7).
 {¶ 18} Further, Anderson contends that Grant's testimony should be disbelieved because it was merely "self serving testimony of a co-defendant[.]" We do not agree with this assessment of Grant's testimony. Grant testified to her role in the alleged crime. She admitted to being involved and to calling Rocco twice in an effort to gain admittance to the skating rink. This testimony was corroborated by Rocco's testimony. Further Rocco testified that his assailant was a man and the woman, Grant, stayed outside by the doors. As such, it does not appear that *Page 7 
Grant's testimony was self-serving, nor does Anderson support this statement with any specific references to the record. See App. R. 16(A)(7).
 {¶ 19} Finally, Anderson contends that Rocco's identification of Anderson was speculative. However, our review of the record indicates that Rocco clearly stated that his assailant was wearing a Halloween mask and held him up at gunpoint. Even if we disregard Rocco's later identification of Anderson, we must conclude that his testimony regarding the Halloween mask was corroborated by Grant's testimony. Grant specifically testified that Anderson entered the skating rink wearing a Halloween mask. Accordingly, we do not find that the jury clearly lost its way and created such a manifest miscarriage of justice thus requiring reversal. Anderson's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ERRED WHEN IT FAILED TO PROVIDE A SEPARATE VERDICT FORM FOR THE SPECIFICATION ATTACHED TO COUNT TWO OF THE INDICTMENT WHICH DEPRIVED [] ANDERSON OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF HIS 5TH, 6TH AND 14TH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSITITUTION."
 {¶ 20} In his third assignment of error, Anderson contends that the trial court erred when it failed to provide a separate verdict form for the specification attached to count two of the indictment, which deprived him of his right to a fair trial. We do not agree.
 {¶ 21} Initially we note that Anderson waived any issue with respect to jury instructions and the jury verdict forms. When specifically asked if he had any additions or corrections to the jury instructions, and if the jury verdict forms were correct, Anderson's counsel stated that he had no objections, therefore affirmatively waiving the argument for appeal. State v. Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 9, quoting United States v. Olano (1993), 507 *Page 8 
U.S. 725, 733. Therefore, we decline to address it. Hairston at para; 9, quoting State v. McKee (2001), 93 Ohio St.3d 292, 299, at fn. 3 (Cook, J., dissenting); Crim. R. 52(B).
 {¶ 22} Anderson's third assignment of error is overruled.
 III. {¶ 23} Anderson's assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, J. WHITMORE, J., CONCUR *Page 1